OPINION.
{¶ 1} Appellant, Linda M. Julian, the guardian ad litem on behalf of Ebony Mitchell ("Ebony") and Geanna Mitchell ("Geanna"), appeals from the April 18, 2002 judgment entry of the Lake County Court of Common Pleas, Juvenile Division, granting appellee Geanna Mitchell-Loresch's motion for legal custody of the two minor children.
 {¶ 2} On January 6, 1999, a dependent complaint was filed, granting temporary custody of the children to the Lake County Department of Job and Family Services ("the Department"). On October 15, 2001, appellant filed a motion to modify temporary custody to permanent custody. On November 21, 2001, appellee, the paternal aunt of the girls, filed a motion for legal custody. A custody hearing was held from March 6, 2002 through March 8, 2002. On April 18, 2002, a judgment entry was filed, granting appellee's motion for legal custody. On May 17, 2002, appellant filed a motion for a stay of execution of the juvenile court order on April 18, 2002, pending appeal, which was denied on May 22, 2002.
 {¶ 3} The facts of the case are as follows: Ebony and Geanna were born on April 4, 1994 to David Mitchell ("David") and Paulette Mitchell ("Paulette"). On January 4, 1999, Madison Police gave physical possession of the children to the Department due to allegations regarding sexual abuse by David. Jessica, the half sister of Ebony and Geanna, disclosed that David, her stepfather, had been having sexual conduct with her. Also, while in David's care, Ebony and Geanna were exposed to pornographic movies and magazines as well as molested by their other half sister, Jalisa. All four girls were removed from David's care and placed in foster homes. In November of 1999, David was convicted of rape, classified as a sexual predator, and is currently serving a fifteen-year prison term.
 {¶ 4} Paulette, who has a history of drug and alcohol abuse, was living with her mother in January of 1999, when the Department received temporary custody of Ebony and Geanna. According to the testimony of Lois Nelson ("Nelson"), a social worker with the Department, Paulette never really involved herself with Ebony and Geanna, and she believes that she is not capable of taking care of the girls.
 {¶ 5} Ebony and Geanna were placed in a foster home where they remained from January 4, 1999 to August 20, 1999. On August 20, 1999, the girls were placed in their present foster home of James and Mary Boyd ("the Boyds") in Youngstown, Ohio. Nelson testified that over the course of the years, she observed positive interaction between Ebony and Geanna with the Boyds. The girls became very comfortable with the Boyds and referred to them as "mom" and "dad." Ebony and Geanna are both academically behind and developmentally delayed in reading and have been involved for the past two years in a tutoring program through the ACLD learning center. Also, Ebony and Geanna are currently in therapy with Karen Kiriazis at the Churchill Counseling Center in Youngstown, Ohio, in order to address the issues of sexual abuse due to concerns about the children's sexual acting out behavior.[1]
 {¶ 6} The Boulder County, Colorado, Department of Social Services conducted a home study of the residence of appellee and her husband, Harry William Loresch ("Harry"). The home study revealed that appellee and Harry are committed to their nieces and are willing to adopt them. Appellee and Harry have had a strong marriage for over six years, get along very well, and treat each other with great respect and kindness. They have a cogent desire to have the opportunity to raise the girls and are able to provide a stable and loving home for them. Although appellee and Harry have some naivete with respect to abuse and trauma issues, they are willing to learn and responded positively to input from the worker regarding the needs of the girls and were made aware of the challenges the girls would likely present. Appellee is able to put the girls on her health insurance. Also, appellee and Harry have a support system of friends and church members. As such, appellee and Harry have met all the criteria to be approved as a permanent placement resource for their nieces.
 {¶ 7} Appellee and Harry are residents of Boulder, Colorado. Appellee has been a medical receptionist for eighteen years. Harry is a school bus driver for Boulder County School District and has summers off. Appellee and Harry live in a two-bedroom condominium complex with a swimming pool, clubhouse, playground, gym, and a separate bedroom and bathroom for Ebony and Geanna. Appellee and Harry have attended parenting classes and completed a CPR course. Appellee exchanged pictures and letters with the girls. Also, appellee worked with Nelson in order to learn as much as possible about the girls and their specific needs.
 {¶ 8} Nelson recommended that it would be in the children's best interest for them to remain with their current foster family rather than be placed with appellee. Nelson stressed that Ebony and Geanna have bonded with the Boyds, consider them as their mother and father, and have adjusted well to the school district and community. Nelson contended that appellee, on the other hand, has only visited with Ebony and Geanna once since January of 1999, and has not formed a bond with them.
 {¶ 9} On April 18, 2002, the trial court granted appellee's motion for legal custody of the two minor children after they had lived with their current foster parents for approximately three years. It is from that entry that appellant filed a timely notice of appeal on May 17, 2002, and makes the following assignments of error:
 {¶ 10} "[1.] The trial court erred in granting legal custody to appellee by considering the interest of appellee and failing to make the best interest of the children the overriding concern.
 {¶ 11} "[2.] The trial court erred by failing to properly record the proceedings as there is no record of the in camera interview with the children."
 {¶ 12} In her first assignment of error, appellant argues that the trial court did not properly weigh the evidence in order to make a valid determination as to what was in the best interest of the children. Appellant specifically contends that appellee did not prove by clear and convincing evidence that legal custody to appellee was in the best interest of the children.
 {¶ 13} The best interest of the child remains the primary standard to be applied in custody cases. In re Pryor (1993), 86 Ohio App.3d 327,332. "There is nothing to indicate that the General Assembly intended for the juvenile courts to use the indicia of the best interest of the child from R.C. 3109.04(F)(1) in making a custodial disposition of a dependent child pursuant to R.C. 2151.353(A)(3)." Id. at 336. However, the best interest of the child must be considered by the juvenile court when determining the statutorily permissible alternatives set forth in R.C.2151.353(A). In re Crook (Nov. 21, 2001), 11th Dist. No. 2000-G-2326, 2001 Ohio App. LEXIS 5209, at 5-6, citing In re Barcelo (June 26, 1998), 11th Dist. No. 97-G-2095, 1998 Ohio App. LEXIS 2921, at 16.
 {¶ 14} In determining the best interest of the child in a custody proceeding incident to a dependency action, there does not appear to be any definitive test or set of criteria to apply. Pryor, supra, at 336. Rather, juvenile courts should consider the totality of the circumstances, including those factors set forth in R.C. 3109.04(F), if applicable. Id. However, there is "no statutory mandate that they be expressly considered and balanced together before fashioning an award of custody under R.C. 2151.353(A)(3)." Id.
 {¶ 15} The standard for review of a trial court in a custody case stresses that "[a]n appellate court cannot substitute its judgment in a trial court's custody determination and may not reverse absent a finding of an abuse of discretion." Crook, supra, at 4, citing Trickey v.Trickey (1952), 158 Ohio St. 9, paragraph two of the syllabus. An abuse of discretion "`* * * connotes more than an error at law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Tawney v. Tawney (Dec. 30, 1983), 11th Dist. No. 1334, 1983 Ohio App. LEXIS 12535, at 2, quoting State v. Adams (1980),62 Ohio St.2d 151, 157. "Thus, we must determine whether the trial court's decision was unreasonable, arbitrary, or unconscionable and, therefore, an abuse of discretion." Crook, supra, at 4, citing Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 16} Also, an appellate court will not reverse a juvenile court's determination of a custody dispute if the judgment is supported by clear and convincing evidence. In re Bailey (July 20, 2001), 11th Dist. No. 2001-G-2337, 2001 Ohio App. LEXIS 3294, at 9, citing In reTaylor (June 11, 1999), 11th Dist. No. 97-A-0046, 1999 Ohio App. LEXIS 2620, at 3. "Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." Bailey, supra, at 9, quoting In re Holcomb
(1985), 18 Ohio St.3d 361, 368.
 {¶ 17} In the case at bar, appellant argues that the trial court did not properly weigh the evidence and abused its discretion by granting appellee legal custody of Ebony and Geanna. Appellant stresses that appellee did not prove by clear and convincing evidence that legal custody to appellee was in the best interest of the children. Appellant argues that the trial court gave appellee, because of her relative status, priority over the best interest of the children. Also, appellant contends that the trial court misinterpreted and did not properly apply R.C.2151.414. We disagree.
 {¶ 18} Both R.C. 3109.04 and R.C. 2151.414 provide the court with similar guidelines for determining what constitutes the best interest of the child. The trial court agrees that although a blood relationship and family unity are factors to consider when determining the best interest of a child, neither one is controlling. The trial court stated in its April 18, 2002 judgment entry that "[w]hile the [c]ourt recognizes that these statutes [R.C. 2151.412, R.C. 2151.413, and R.C. 2151.414] do not mandate custody to relatives, except in cases wherein the child is orphaned, still they clearly indicate the intent of the legislature that appropriate relatives should generally be given priority consideration." See, also, In re Martin (Sept. 22, 1983), 10th Dist. Nos. 83AP-29 and 83AP-30, 1983 Ohio App. LEXIS 14985, at 6. We agree.
 {¶ 19} In the instant matter, the natural mother and father of Ebony and Geanna were not available as custodians and took no part in the proceedings. However, there is a blood relative and her husband who are more than qualified, dedicated, and willing to provide the requisite care for Ebony and Geanna, and take them out of the state's custody. Although appellant stated in her recommendation that the Boyds are willing to make a long-term commitment to the girls and would be willing to adopt them if the opportunity would arise, there was no specific evidence to this effect presented. Also, the motion for permanent custody was filed by appellant rather than the Department which is unique in this type of proceeding.
 {¶ 20} The trial court was faced with a true dilemma in this case but addressed the difficult issues in a very insightful and professional manner. Based on Pryor, supra, although the trial court reviewed the qualifications of appellee and Harry and stressed them in its judgment entry, it also considered the totality of the circumstances and gave an in depth analysis regarding the best interest of the children before fashioning an award of custody to appellee. The trial court took into account that although the girls are closely bonded with the Boyds, they are also bonded to their grandmother and are minimally bonded to appellee and Harry. The trial court stated in its judgment entry that "[a]lthough bonding is certainly very important and a consideration in custody matters, still it is far from being dispositive. Of course, the girls are bonded with the [Boyds] for they are the ones who have cared for and protected them for most of their cognitive years. Children of those tender years, however, bond easily with adults who care for and provide for them. Young children often are very closely bonded to parents who abuse or neglect them, but it is not in their best interest to live with those parents. The [c]ourt cannot base its decision upon who the children are bonded with, but must consider that only as one of the factors."
 {¶ 21} The trial court further stated in its judgment entry that "[a]nother factor of great consequence in the mind of the [c]ourt is that if this [m]otion was denied and the girls were ultimately adopted either by Mr. and Mrs. Boyd or another couple, it is possible, if not likely, that their family relationship with grandmother, aunts, uncles and cousins would be broken. While this is not definitive, it is beyond the power of this [c]ourt to control. This is an extremely close family, which has collectively made substantial efforts and financial investments to provide for these girls."
 {¶ 22} The trial court reviewed the home study, the steps taken by appellee to make her home available for the girls, the efforts made by appellee to learn more about the girls' situation regarding sexual abuse and to provide the necessary emotional and psychological services as well as the availability of permanent family support. Therefore, there was no abuse of discretion because the trial court's determination was not unreasonable, arbitrary, or unconscionable, pursuant to Tawney, supra. Thus, appellant's first assignment of error is without merit.
 {¶ 23} In her second assignment of error, appellant argues that the trial court erred by failing to properly record the proceedings as there is no record of the in camera interview with the children due to the failure of the equipment. Appellant also contends that the record contains a significant amount of inaudible testimony from the trial.
 {¶ 24} Pursuant to Juv.R. 37(A), "[t]he juvenile court shall make a record of adjudicatory and dispositional proceedings in abuse, neglect, dependent, unruly, and delinquent cases; permanent custody cases; and proceedings before magistrates. In all other proceedings governed by these rules, a record shall be made upon request of a party or upon motion of the court. The record shall be taken in shorthand, stenotype, or by any other adequate mechanical, electronic, or video recording device." The staff note to the 1996 amendment states that "the making of a record is mandatory in adjudicatory and dispositional proceedings."
 {¶ 25} Since a transcript would aid independent appellate review, juvenile courts must strictly comply with the requirement in amended Juv.R. 37. In re Dikun (Nov. 28, 1997), 11th Dist. No. 96-T-5558, 1997 Ohio App. LEXIS 5332, at 6. In Dikun, the appellant contended that the juvenile court erred to his prejudice because it failed to make a record of the adjudicatory and dispositional proceedings pursuant to Juv.R. 37. Id. at 3. This court agreed with the appellant and held that because the juvenile court failed to make any record of the adjudicatory and dispositional proceedings, it violated Juv.R. 37. Id. at 6. "Any other holding would eviscerate the rule." Id.
 {¶ 26} Although failure to make any record of adjudicatory and dispositional proceedings clearly violates Juv.R. 37(A), failure to create a complete record does not always violate the rule. See In rePrice (Mar. 25, 2002), 12th Dist. Nos. CA2001-02-035, CA2001-04-085, 2002 Ohio App. LEXIS 1349, at 5. In Price, the appellant argued that because the videotape of the victim's testimony was inaudible, the trial court failed to make a complete record of appellant's adjudication in violation of Juv.R. 37(A). Id. at 2-3. The appellant supplemented the record by requesting the inclusion of the videotape, but did not further supplement the record with an App.R. 9 statement of the victim's testimony. Id. at 3.
 {¶ 27} An appellant has the opportunity to modify or correct the record in order to preserve his arguments for review, pursuant to App.R. 9(E). Id. at 4, citing State v. Chapple (May 17, 1993), 12th Dist. No. CA92-11-100, 1993 Ohio App. LEXIS 2556. "An appellant has a duty to exemplify any alleged errors by reference to matters in the record, and that duty is discharged by the filing of a verbatim transcript, a narrative statement of the evidence as provided in App.R. 9(C), or an agreed statement of the record filed pursuant to App.R. 9(D). Price at 4, citing Djurich v. LaHood (1990), 66 Ohio App.3d 332. "Absent any exemplified error, a reviewing court has no choice but to presume regularity in the proceedings of the trial court and affirm." Id.
 {¶ 28} The Price court, supra, at 4-5, stated that "[t]he instant case involves the juvenile court's attempt at a verbatim transcript, but with less than perfect results. However, the record in this case is not silent. Both the state and [the] appellant presented evidence that is available for this court's review." Therefore, the court in Price
declined to reverse the trial court based on the inaudible testimony of the victim, because the appellant failed to inform the court with specificity what evidence or prejudicial errors were contained in the inaudible testimony and did not supplement the record with a statement or summary of the evidence in question. Id. at 5.
 {¶ 29} In the case sub judice, the record contains portions of inaudible testimony. Also, the in camera interview of Ebony and Geanna with the judge was inadvertently erased. Appellant argues that without a complete transcript, this court is unable to conduct a meaningful review of this appeal. We disagree. The juvenile court complied with the requirement of Juv.R. 37(A) in making a record. Although portions of the record were inaudible, there was no difficulty in fully understanding the development of the proceedings regarding the custody of the girls. Also, even though the in camera interview was unavailable for review, the judge stated in the court's judgment entry that Ebony and Geanna have closely bonded with their foster parents and wish to remain with them. Thus, the most important content of the in camera interview, the girls' wishes, was referenced in the judgment entry and was favorable to appellant's position. Therefore, there was no prejudice. See In re Matis (May 24, 1995), 9th Dist. No. 16961, 1995 Ohio App. LEXIS 2170, at 13.
 {¶ 30} The record in this case is not silent because both sides presented recorded evidence which was available for this court's review. Also, based on Price, appellant failed to inform the court with specificity what evidence or prejudicial errors, if any, were contained in the inaudible testimony and appellant did not supplement the record with a statement or summary of the evidence in question. Therefore, pursuant to Price and Djurich, absent any exemplified error, this court has no choice but to presume regularity in the proceedings of the trial court and affirm. Thus, appellant's second assignment of error is without merit.
 {¶ 31} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas, Juvenile Division, is affirmed.
WILLIAM M. O'NEILL, J., and CYNTHIA WESTCOTT RICE, J., concur.
[1] While in their initial foster home placement, there was an attempt by Ebony and Geanna to undress another child, Ebony attempted to insert a toy car in her vagina, and both girls grabbed their first foster father's private parts.